# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SET FREE COMMUNITY** )<br>**DEVELOPMENT CORPORATION,** )<br>)<br>  **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ROBERT RILEY, et al.,** )<br>)<br>  **Defendants.** ) | **Case No.:  2:10-CV-1769-VEH** |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

Plaintiff Set Free Community Development Corporation ("Set Free") is an entity that "operates an electronic charity bingo facility . . . in Midfield, Alabama." (Doc. 7 ¶ 1).  This action, brought pursuant to 42 U.S.C. § 1983 against a host of defendants in their official capacities (*i.e.*, Defendants Robert Riley (the "Governor"); (Arthur Green (the "District Attorney"); John Tyson (the "Task Force Commander"); Colonel J. Christopher Murphy (the "ADPS Director"); Major Hugh B. McCall (the "ABI Division Chief"); and Mike Hale (the "Sheriff")), was initiated by Set Free on June 30, 2010.  (Doc. 1).

On July 8, 2010, Set Free filed an amended complaint.  (Doc. 7).  In it, Set Free

states that "[t]his action is brought pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief to prevent the defendants from further depriving, without due process, Set Free of its rights under the United States Constitution to operate a legal business, contract with public entities, use licenses and permits issued by public authorities and to exercise other property rights." (Doc. 7 ¶ 9).

The amended pleading seeks: (1) preliminary injunctive relief "enjoining the defendants from interfering with or preventing Set Free from conducting its electronic charity bingo operations pending the outcome of this civil action" (Doc. 7 at 9 ¶ 36); and (2) declaratory and permanent injunctive relief regarding the legality of Set Free's operations and the right to a pre-enforcement hearing. (*Id.* at 9 ¶ 37). It also withdraws Set Free's count for monetary damages that was initially asserted as a third claim. (*Id.* at 9).

Pending before the court are the following five defensive motions: (1) the District Attorney's Motion to Dismiss (Doc. 14) filed on July 26, 2010; (2) the Sheriff's Motion to Dismiss, Or, in the Alternative, Motion to Stay (Doc. 15) filed on July 27, 2010; (3) the Governor's, the ADPS Director's, and the ABI Division Chief's Motion to Dismiss First Amended Complaint (Doc. 17) filed on July 30, 2010; (4) the District Attorney's Amended Motion to Dismiss (Doc. 22) filed on August 4, 2010; and (5) the Task Force Commander's Motion to Dismiss First Amended Complaint

2

(Doc. 26) filed on August 5, 2010. Defendants collectively challenge the viability of Set Free's complaint on a variety of grounds, including the lack of subject matter jurisdiction. (*See, e.g.*, Docs. 17, 22, 26). For the reasons explained below, the court concludes that subject matter jurisdiction does not exist, and accordingly, dismisses this litigation without prejudice.

## II.   SUBJECT MATTER JURISDICTION

### A.   Generally

This court's judicial authority is limited by the Constitution to resolution of "cases" and "controversies." U.S. Const. art. III, § 2. Moreover, the court has an ongoing obligation, *sua sponte*, to analyze and determine whether it has before it a justiciable case or controversy. *See Fitzgerald v. Seaboard System R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("We always must investigate questions of subject matter jurisdiction, whether or not they are raised by the parties to the case."). Whether a case or controversy exists turns on "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Wendy's Intern, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (quoting *Maryland Casualty Co. v. Pacific Oil Co.*, 312 U.S. 270, 273 (1941)).

"A defendant may attack subject matter jurisdiction in two different ways-facially and factually." *McMaster v. U.S.*, 177 F.3d 936, 940 (11th Cir.1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam)). "'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true . . . .'" 177 F.3d at 940 (citation omitted). On the other hand, " '[f]actual attacks,' . . . challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (citing *Lawrence*, 919 F.2d at 1529 (citation omitted)). In this instance, Defendants have launched a facial challenge on Set Free's complaint.

### B. The Ripeness Doctrine

Reviewing for ripeness is one of the relevant inquiries pertaining to subject matter jurisdiction. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.7 (11th Cir.1989) ("Ripeness is a question of subject matter jurisdiction.").

As another district court within the Eleventh Circuit has aptly explained, the ripeness doctrine in the context of a comparable § 1983 constitutional action involving the legality of video gaming machines:

> Certainly Plaintiffs satisfy the "well-pleaded complaint" rule by alleging

a deprivation of constitutional rights under 42 U.S.C. § 1983.  Though this rule is a prerequisite to a finding of federal jurisdiction, <u>alone it is not sufficient</u>.  Rather, "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of <u>sufficient concreteness to evidence a ripeness for review</u>."  *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).  Unless Plaintiffs have suffered an injury or, at a minimum, have "come into immediate danger of suffering an injury," the ripeness doctrine precludes the court from addressing their claims. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999).

"Federal courts lack the power to issue advisory opinions." *McKusick v. City of Melbourne*, 96 F.3d 478, 482 (11th Cir. 1996).  As such, the purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967).  In this light, it is worth noting that courts have recognized an additional basis for the ripeness doctrine, namely prudential considerations. *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) (holding that, in addition to constitutional requirement of sufficient injury, ripeness analysis should consider "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court") (citing *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984)). <u>In other words, even if the court may constitutionally exercise jurisdiction, it may refuse to do so, particularly in cases where injunctive relief is sought</u>. *McCarthy v. Briscoe*, 553 F.2d 1005, 1007 (5th Cir. 1977) ("Injunctive remedy is discretionary and it is properly withheld when the controversy is not ripe for judicial resolution.").

Ripeness is essentially a "question of timing."  *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974).  The Eleventh Circuit has held that two factors are to be considered in determining whether a plaintiff's grievances are so ripe as to constitute a justiciable "case or controversy."  The first is "the fitness of the issues for judicial decision."  *Digital Properties*, 121 F.3d at 589. Courts should be cautious when a case is anchored in future events that

may not occur as anticipated, if at all; courts simply "may not pass on hypothetical matters." *Kirby*, 195 F.3d at 1290. The second factor is "the hardship to the parties of withholding court consideration." *Digital Properties*, 121 F.3d at 589. In short, the possibility that a court might venture into the realm of speculation should not categorically curtail review when such a curtailment would entail significant detriment to a party. *But cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 300, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979) ("Even though a challenged statute is sure to work the injury alleged, however, adjudication might be postponed until a better factual record might be available.") (internal quotations omitted).

*A & M Enterprises, LLC. v. Houston*, 179 F. Supp. 2d 1356, 1360-61 (M.D. Ala. 2001) (emphasis added) (footnote omitted).

## III.  ANALYSIS

Set Free's constitutional claim brought pursuant to § 1983 is one of procedural as opposed to substantive due process.[1] (*See* Doc. 7 ¶ 9 ("Preliminary Statement")).

---

[1]  As the Eleventh Circuit has summarized:

> In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 515, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural-not substantive-due process are observed.

*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994).

More particularly, Set Free acknowledges in its complaint that "[n]o seizure of electronic bingo machines by the defendants has occurred at Set Free's facilities" but urges that "there has been the <u>effective</u> deprivation of Set Free's right and ability to operate a business that is clearly lawful under the Alabama Constitution and local ordinance."[2] (Doc. 7 at 2-3 ¶ 9 (emphasis added)). This "effective deprivation" stems from Set Free's voluntary decision to shut its business down because it anticipates that Defendants will seize its bingo machines if it continues to operate.

Because of the procedural nature of Set Free's due process claim, the constitutional inquiry for the court to consider is whether adequate procedures under state law are in place to review an alleged improper deprivation of Set Free's property. As the Eleventh Circuit framed the procedural due process issue in the context of a county employee who was fired by a board of commissioners: "It is to an examination of this state remedy-and a determination of whether it satisfies due process-that we now turn." *McKinney*, 20 F.3d at 1563 (footnote omitted). However, here no actual deprivation by state authorities has taken place and relatedly, there has

---

[2] Set Free has not cited to nor has this court been able to independently locate any controlling authority that confirms that an effective or constructive deprivation of property can ever support a procedural due process violation. Regardless, this court struggles to envision how such a theory would ever result in a constitutionally ripe procedural due process claim.

been no pursuit by Set Free of a state remedy whose the adequacy this court can evaluate.

Turning to the *Digital Properties* factors, the court first finds that Set Free has not presented it with a sufficiently "mature claim for review[,]" 121 F.3d at 590, upon which this court "'could make a 'well-reasoned, constitutional decision.'" 121 F.3d at 591 n.4 (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991)). In particular, this court is ill-equipped to make a procedural due process ruling, much less an effective one, in the absence of any state action <u>directly</u> affecting Set Free as well as any efforts on the part of Set Free to seek redress under state law for these completed (as opposed to anticipatory) acts made by public officials. Instead, Set Free's inchoate litigation is much too abstract, "and this court has neither the power nor the inclination to resolve it." *Digital Properties*, 121 F.3d at 591 (citations omitted).

As for the second *Digital Properties* factor, although the Eleventh Circuit identified hardship to the parties as a relevant ripeness inquiry, the decision did not directly analyze that factor's existence *vel non* and, instead, affirmed the district court's dismissal due to "Digital's erroneous presumptions and impatience [that] led it to rush to the courthouse and present an insufficiently concrete claim." 121 F.3d at 591. Therefore, under Eleventh Circuit precedent, the presence of the first *Digital*

8

*Properties* factor, at least under certain circumstances, can establish that a matter is unfit for review without ever expressly evaluating the second factor.

Alternatively, to the extent that this court must expressly consider hardship and assuming without deciding that Set Free's voluntary decision to cease operations in anticipation of Defendants' future actions sufficiently shows hardship in "withholding court consideration[,]" 121 F.3d at 589 (citations omitted), any degree of such hardship is substantially outweighed by the underdeveloped nature of Set Free's potential procedural due process claim. Accordingly, an evaluation of both *Digital Properties* factors confirms that this lawsuit is not sufficiently developed for judicial review.

Additionally, this court's ripeness ruling is bolstered by the *Houston* case. In determining that the plaintiff's due process claims were unripe, the district court there reasoned:

> Finally, the due process claims asserted under the Fourteenth Amendment are likewise due to be dismissed under the ripeness doctrine. Defendants have made clear that they intend to invoke the civil forfeiture procedures available to them under Alabama state law. *See* Ala. Code § 13A-12-30 (1975). Proceedings would then take place in state court wherein Plaintiffs could present the arguments they wish for the court to hear presently. <u>As with the Fourth Amendment claim, the court finds that this is not the occasion to evaluate the adequacy of the [sic] such procedures</u>. *See Hemperly v. Crumpton*, 708 F. Supp. 1247, 1250-51 (M.D. Ala. 1988) ("<u>While it is undisputed that plaintiffs have a federal constitutionally protected right to own the property in</u>

<u>question, defendants have not yet done anything to deprive them of this right</u>."); *cf. Novel Mgmt. v. Woodward*, No. 01-BU-1699-S, 2001 U.S. Dist. LEXIS 13210 at *14 (N.D. Ala. July 13, 2001) ("[T]he Constitution simply does not require this type of hearing to occur prior to the seizure of the property where it is determined that there is probable cause to believe that such is contraband under state law.").

In short, the present matter does not belong in federal court. <u>Any alleged constitutional problems that might be forthcoming are far too speculative to satisfy the requirements of the ripeness doctrine</u>.

*Houston*, 179 F. Supp. 2d at 1362-63 (emphasis added).

Similarly, this is not the right point in time to evaluate the adequacy of any procedures in place to redress a wrongful taking of property because there have simply been no concrete triggering events, *i.e.*, a state deprivation of a property right as well as a specific (as opposed to a theoretical) application of state procedures to review the legality of that challenged deprivation. Additionally, to the extent that Set Free maintains that procedural due process requires the implementation of a pre-deprivation procedure (Doc. 7 at 9 ¶ 37 ("Set Free requests that this Court enter a judgment declaring that Set Free has a due process right to notice and a constitutionally adequate hearing <u>before</u> the defendants can interfere with Set Free's operations, which hearing should determine, among other things, whether Set Free's electronic charity bingo was conducted in accordance with the Bingo Ordinance which is legal under the Amendment and Alabama law.") (emphasis added)), such

position is squarely at odds with Eleventh Circuit and Supreme Court precedent and fails to override this court's ripeness concerns:

> In *Parratt* (and its progeny, *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)), <u>the Supreme Court held that due process did not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property</u>. All that due process requires, the Court said, is a <u>post-deprivation</u> "means of redress for property deprivations satisfy[ing] the requirements of procedural due process." *Parratt*, 451 U.S. at 537, 101 S. Ct. at 1914; *accord Hudson*, 468 U.S. at 533, 104 S. Ct. at 3204.
>
> The precedent established by *Parratt* is unambiguous: even if McKinney suffered a procedural deprivation at the hands of a biased Board at his termination hearing, <u>he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation</u>. As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners, under *Parratt*, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation.

*McKinney*, 20 F.3d at 1562-63 (emphasis added). Likewise, an anticipated or threatened occurrence of a future procedural deprivation of property is not the equivalent of a constitutionally ripe procedural due process dispute.

## IV. CONCLUSION

Therefore, for all these reasons, the Governor's, the ADPS Director's, and the ABI Division Chief's Motion to Dismiss First Amended Complaint (Doc. 17), the District Attorney's Amended Motion to Dismiss (Doc. 22), and the Task Force

Commander's Motion to Dismiss First Amended Complaint (Doc. 26) are due to be granted in part, and Set Free's case is due to be dismissed in its entirety, without prejudice.  Further, Set Free's Motion for Expedited Hearing on Preliminary Injunction (Doc. 10), the District Attorney's Motion to Dismiss (Doc. 14), the Sheriff's Motion to Dismiss, Or, in the Alternative, Motion to Stay (Doc. 15), and the remaining parts of Docs. 17, 22, and 26, are all due to be termed as moot.  The court will enter an order consistent with this memorandum opinion.

      **DONE** and **ORDERED** this the 25th day of October, 2010.

                                                          */s/ Virginia Emerson Hopkins*
                                                          **VIRGINIA EMERSON HOPKINS**
                                                           United States District Judge